Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | |
| Information associated with Facebook user ID 100030142082943 that is stored at premises controlled by Facebook, Inc., headquartered in Menlo Park, California | Case No.  22-4027MB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California.
(identify the person or describe the property to be searched and give its location):

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _____February 10, 2022_____ ,
(not to exceed 14 days)

☐ in the daytime 6:00 a.m. to 10 p.m.
☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

<u>Any U.S. Magistrate Judge on duty in AZ.</u>
      *(name)*
☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)      ☐ for  days (*not to exceed 30*)
                                        ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____      *Camille D. Bibles*  Digitally signed by Camille D. Bibles
Date: 2022.01.27 11:41:19 -07'00'
                                        *Judge's signature*

City and State:  <u>Flagstaff, Arizona</u>          <u>Honorable Camille D. Bibles, U.S. Magistrate Judge</u>
                                        *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.:          22-4027MB | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|

| Inventory Made in the Presence of: |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

Executing officer's signature

Printed name and title

## ATTACHMENT A

### Particular Items to be Searched

This warrant applies to information associated with the Facebook user ID 100030142082943 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers, for user IDs listed in Attachment A;

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2019 to December 1, 2021;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2019 to December 1, 2021, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from January 1, 2019 to December 1, 2021, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2019 to December 1, 2021;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **fourteen days (14 days)** of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Sexual Abuse of a Minor from January 1, 2019 to December 1, 2021, for accounts identified on Attachment A, information pertaining to the following matters:

a.     Graphic images submitted to minors;

b.    Request for graphic images of minors;

c.    Grooming of minors, sexual in nature;

d.    Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e.    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.    The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

Information associated with Facebook user
ID 100030142082943 that is stored at
premises controlled by Facebook, Inc.,
headquartered in Menlo Park, California

)
)
)
)
)

Case No.  22-4027MB

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, F.B.I. Special Agent Louis-Philippe Noel, a federal law enforcement officer for the government,
request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the
following person or property:

**See Attachment A, hereby incorporated by reference.**

located in the Northern District of California, there is now:

**See Attachment B, hereby incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [X] evidence of a crime;
- [X] contraband, fruits of crime, or other items illegally possessed;
- [ ] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153 and 2243 | Sexual Abuse of a Minor |

The application is based upon the following facts:

- [X] Continued on the attached sheet (see attached **Affidavit**).
- [ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Powell   *Ryan Powell*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty
of perjury that the foregoing is true and correct.

Executed on: 1/26/2022

_____
*Applicant's Signature*

Louis-Philippe Noel, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone**

Date/Time: _____

Date:  01/27/2022

Camille D.
Bibles

Digitally signed by Camille
D. Bibles
Date: 2022.01.27 11:40:47
-07'00'

_____
*Judge's Signature*

City and State:  Flagstaff, AZ

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A

### Particular Items to be Searched

This warrant applies to information associated with the Facebook user ID 100030142082943 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers, for user IDs listed in Attachment A;

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2019 to December 1, 2021;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2019 to December 1, 2021, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)    All other records and contents of communications and messages made or received by the user from January 1, 2019 to December 1, 2021, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)    All "check ins" and other location information;

(h)    All IP logs, including all records of the IP addresses that logged into the account;

(i)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)    All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2019 to December 1, 2021;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **fourteen days (14 days)** of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Sexual Abuse of a Minor from January 1, 2019 to December 1, 2021, for accounts identified on Attachment A, information pertaining to the following matters:

a.     Graphic images submitted to minors;

b.       Request for graphic images of minors;

c.       Grooming of minors, sexual in nature;

d.       Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e.       Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.       The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT

I, Louis-Philippe Noel (Affiant), a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows.

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. (Facebook), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the FBI, currently assigned to the Phoenix Division, Flagstaff Resident Agency, in Flagstaff, Arizona. I have been so employed since July 2017. I received training at the FBI Training Academy, and have experience including, but not limited to, investigating major crimes that occur on Indian reservations, and specifically the Navajo Indian Reservation, Indian Country, within the District of Arizona (AZ).

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1153 and 2243, Sexual Abuse of a Minor, have been committed by Tylane Tallsalt (TALLSALT).  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      On October 29, 2021, Navajo Nation Police Officer L. Hatathlie observed a vehicle with its headlights powered on parked on top of a hill in an area known for illegal activity in the Tuba City District.  Officer Hatathlie and Officer E. Yazzie drove to the location at milepost 313 on U.S. Highway 160, located on the Navajo Nation Indian Reservation, where the vehicle was present.  Upon arrival, the officers noticed the vehicle was a white sedan with Arizona plate MZA5B7A, known to belong to TALLSALT.  When the officers approached the vehicle, they activated their overhead lights on their patrol vehicle containing red and blue emergency lights.  Upon approaching the vehicle, the officers noticed the windows were tinted and asked the driver to lower his window.  The driver was identified as TALLSALT.  When TALLSALT lowered the driver's side window, the officers noticed a female passenger in the front seat covering her legs with what looked like a gray sweater.  The officer asked TALLSALT why the vehicle was moving while the officers approached.  TALLSALT replied, "Ah, kissing."

2

The officer's asked the female passenger her age (a juvenile, henceforth referred to as K.S.). K.S. replied that she was 15 years old. Upon reviewing TALLSALT's information, the officers determined TALLSALT's age to be 26 years old. TALLSALT stated he did not know K.S. was 15 years of age. TALLSALT stated he was only kissing K.S. and was not sure why K.S.'s pants were lowered to her ankles. K.S. stated when the officers arrived, she was adjusting her underwear because TALLSALT had been touching her "down there."

7.    The Affiant observed the body camera footage provided by Officer Hatathlie. The footage is consistent with Officer Hatathlie's reporting of the situation: When Officer Hatathlie initially asked TALLSALT what they were doing, TALLSALT replied they were just talking. When Officer Hatathlie stated TALLSALT's vehicle was moving when the officers approached the vehicle, and inquired as to the cause of the movement, TALLSALT replied, "Ah, kissing." K.S. had her pants down and was covering herself. K.S. stated TALLSALT had been touching her down there. TALLSALT stated he was unaware what the passenger's age was. TALLSALT stated he has known K.S. for two years. TALLSALT stated K.S.'s parents are unaware that they were together and did not provide consent.

8.    On December 23, 2021, K.S. was interviewed by a Child Forensic Interviewer. K.S. stated she met TALLSALT when she was 13 years old. K.S. and TALLSALT met on Facebook. TALLSALT talked to K.S. about her age via social media, which at the time was 13 years old; TALLSALT was approximately 24 years of age at this point. TALLSALT told K.S. age does not matter.

9.    K.S. told the interviewer TALLSALT parked his vehicle on the hill. TALLSALT and K.S. were talking when all of the sudden, TALLSALT grabbed K.S.'s leg. K.S. told TALLSALT he could not do that. TALLSALT asked K.S. if he could kiss her. K.S. said "no."

3

TALLSALT placed his hands on K.S.'s legs, mid-thigh. K.S. told TALLSALT "no." K.S. told the interviewer, "It went the wrong way." K.S. became emotional, and no longer cared what they did. They started to make out. TALLSALT started to take off his pants, but K.S. told TALLSALT it was "too far." TALLSALT insisted and did it anyway. TALLSALT asked K.S. to sit on "it", and she got scared. She didn't think, and just did it. They were both in the driver's seat and K.S. was on top of TALLSALT. When K.S. sat on "it," "it" went inside of her. "It" went inside of her "uterus." K.S. clarified "it" was TALLSALT's "private part," and his private part went inside of her. K.S. clarified "it" was his penis. TALLSALT was kissing her and her neck. TALLSALT tried to pull off her shirt. TALLSALT asked if she wanted to keep it going and if they wanted to see each other. TALLSALT was not wearing a condom ("protection"). What made it stop happening is when the cops pulled up. She was about to say something to TALLSALT, but that is when the cops came.

10.     On December 23, 2021, the Affiant interviewed K.S. and asked for K.S. to identify the social media accounts TALLSALT utilized to message to her. K.S. identified the following Facebook account: Tylane Tallsalt (UEID: 100030142082943 / www.facebook.com/tylane.tallsalt.3). A photograph was taken of K.S.'s phone:



4

11.     A few weeks after the incident, TALLSALT contacted K.S. on Instagram.  K.S. told TALLSALT she could not talk to him.  TALLSALT asked K.S. if she could go smoke; K.S. replied that she does not do that.  K.S. told TALLSALT that the police officers told her not to contact him.  TALLSALT said he did not care, and he kept messaging K.S. and asking her to smoke and hang out.  K.S. typed "NO" in all capital letters.  K.S. blocked his accounts on Facebook and Instagram.

### Background Concerning Facebook

12.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

13.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

14.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account

5

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link

to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

18.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

20.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

21.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

22.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

23.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

24.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

25.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

26.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

27.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

9

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

29.     Here, K.S. reported that she met TALLSALT on Facebook and that they discussed her age while communicating on social media.  Her age at the time they met was 13, and TALLSALT was in his mid-20's.  K.S.'s age, and TALLSALT's knowledge of her age, are relevant factors to potential charges and defenses under 18 U.S.C. §§ 1153 and 2243, Sexual Abuse of a Minor.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

30.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

31.     Based on the foregoing, I request that the Court issue the proposed search warrant.

32.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant

10

by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

33. Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Dated: _1/26/2022_____

Special Agent Louis-Philippe Noel
Federal Bureau of Investigation

Subscribed and sworn to telephonically this __27th__ day of January, 2022.

Camille D. Bibles  Digitally signed by Camille D. Bibles
Date: 2022.01.27 11:40:10 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
District of Arizona

11